Filed 5/15/25  P. v. Williams CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>TASHION LAMONT WILLIAMS,<br><br>   Defendant and Appellant. | D084228<br><br><br>(Super. Ct. No. SCD150358) |

APPEAL from an order of the Superior Court of San Diego County, Evan P. Kirvin, Judge.  Affirmed.

Tashion Lamont Williams, in pro. per.; and Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

Defendant Tashion Lamont Williams appeals from an order after an evidentiary hearing denying his petition for resentencing relief under Penal Code section 1172.6.[1]  His appointed counsel filed an opening brief raising no arguable issues and requesting that we exercise our discretion to review the

_____

[1]    Further undesignated statutory references are to the Penal Code.

1

record for potential issues under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*).[2] We informed Williams of his right to personally file a supplemental brief, and he has done so. We have reviewed the specific contentions raised by Williams in his brief and have also independently reviewed the record. We find no reasonably arguable appellate issues. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 1995, Honey George and her boyfriend went to a taco shop with Eddie Hamilton. Hamilton told George that he owed someone a lot of money, was scared, and needed to "get off this side of town." George ordered her food and sat outside the taco shop with her boyfriend. Williams and Darnell Johnson, appearing agitated, arrived at the taco shop and asked George if anyone had seen Hamilton. George told them that Hamilton was inside the taco shop. Williams was wearing a blue jogging suit. Johnson was bigger than Williams. Williams and Johnson separated and walked down two different streets leading from the taco shop.

That morning, Willie Lee Barksdale greeted Hamilton as he was walking by. Hamilton appeared to have a bulge underneath his shirt, but Barksdale knew it was not a weapon because it was like a bag of groceries and Hamilton was holding it with his arm. About 15 minutes later, two men walked by and suddenly jumped behind a ledge. When the men told Barksdale to look the other way, Barksdale did so and then saw Hamilton walking up the street. As Hamilton passed the two men, they jumped out at him and the shorter of the two men, wearing a blue jogging suit, swung at

---

[2]     Under *People v. Delgadillo* (2022) 14 Cal.5th 216, 223 (*Delgadillo*), we have discretion whether to independently review the record in an appeal challenging an order denying a section 1172.6 petition. We have exercised that discretion and independently reviewed the record in this case.

him.  Hamilton raised his hands, backed up, and then ran down the street and along the trolley tracks.  The two men chased him behind a building.  The shorter of the two men was closer to Hamilton than the taller man.  A few minutes later, Hamilton reappeared from behind the building, held himself, and then stumbled and fell.  The two men also reappeared and "took off" after one of them threw something into a yard.  Barksdale called 911.

Rita Arellano saw the "guy in the jacket" hit Hamilton.  Hamilton was holding his stomach and hit his head on the curb.  Arellano assumed that he had been stabbed.  Two men were standing within a couple of feet of Hamilton.  The "guy in a blue jacket" was standing closer to Hamilton.  Hamilton stood up and ran toward the trolley tracks.  The two men walked away.

Francisco Medina was outside his house when he heard a man scream.  He saw a man lying on the ground and two men walking down the street.  The men started jogging and then one of them threw an object through a fence.

Nancy Dock was driving the trolley when she saw two men chasing Hamilton.  When they were about three feet from her window, she saw the face of the man closest to Hamilton and then heard "a tackle or some kind of contact."  At trial, Dock identified Williams as the man who was closest to Hamilton and wearing a blue shirt.  She described Williams as having a "look of hate" in his eyes.

Jim Nutting and Edward Mark were riding on the trolley when they saw Hamilton being chased by two men.  The man closest to Hamilton was smaller than the other man, wore a dark blue jacket, and had a knife in his hand.  Hamilton fell backwards and landed on his back.  The man with the knife "pounced" on Hamilton and swung the knife at him.  John Coffey was

3

also riding on the trolley and saw the man with the knife swing it in an overhead stabbing motion at Hamilton.

Hamilton sustained a single stab wound to his abdomen and was pronounced dead at the hospital. Police found a knife in a nearby construction yard.

In 2000, police officers interviewed Williams about the Hamilton stabbing. After waiving his *Miranda*[3] rights, Williams admitted stabbing Hamilton, but claimed he did so in self-defense. Williams stated that Hamilton pulled a knife on him during an argument and he inadvertently stabbed Hamilton while grabbing the knife from him.

In 2001, Williams and Johnson were tried together with two different juries on charges of first degree murder. The eyewitnesses testified as described above. The court also admitted in evidence a transcript and videotape of Williams's 2000 interview during which he admitted stabbing Hamilton. The videotape was played for the jury. Williams's jury convicted him of one count of first degree murder. (§ 187, subd. (a).) His jury also found true the allegation that in committing the murder he personally used a deadly and dangerous weapon (i.e., a knife). (§ 12022, subd. (b).) It also found true the special circumstance allegation that in committing the murder he intentionally killed the victim while lying in wait. (§ 190.2, subd. (a)(15).) The trial court sentenced Williams to life without the possibility of parole. On direct appeal, we affirmed the judgment against Williams.[4] (*People v. Johnson* (Jan. 7, 2003, D038107) [nonpub. opn.] (*Johnson*).)

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[4] Johnson was also convicted of first degree murder. We considered their appeals of their convictions together.

In 2022, Williams filed his instant petition for resentencing under section 1172.6.[5] The trial court appointed counsel for him, reviewed the record of conviction, and held a hearing on whether he had shown a prima facie case for relief under section 1172.6. The court denied the petition, finding that the record showed Williams was the actual killer and had the specific intent to kill the victim and therefore he was not eligible for relief as a matter of law. On appeal, we reversed that order and remanded the matter with directions that the court issue an order to show cause and conduct an evidentiary hearing on Williams's section 1172.6 petition. (*People v. Williams* (Sept. 20, 2023, D081186) [nonpub. opn.] (*Williams*).)

On May 22, 2024, after the trial court issued an order to show cause on remand, it conducted an evidentiary hearing on the petition, stating that it had read and considered all of the parties' filings, the record of Williams's 2001 conviction, and the transcript from his 2001 criminal trial. The court took judicial notice of that trial transcript. After hearing arguments of counsel, the court found that the prosecution had proved beyond a reasonable doubt that Williams was ineligible for resentencing under section 1172.6 because he was the actual killer and acted with the specific intent to kill the victim. In so finding, the court noted that the jury had found true both the section 12022, subdivision (b), personal use allegation and section 190.2, subdivision (a)(15), lying in wait special circumstance allegation. Williams filed a notice of appeal challenging the May 22, 2024 order.

DISCUSSION

Effective in 2019, section 189, subdivision (e), was added and amended the felony-murder rule by providing that a participant in a qualifying felony

---

[5] His petition was filed under former section 1170.95, which is now section 1172.6.

is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e), added by Stats. 2018, ch. 1015, § 3; *Delgadillo, supra,* 14 Cal.5th at p. 223; *People v. Harden* (2022) 81 Cal.App.5th 45, 50 (*Harden*).) Section 188, subdivision (a)(3), was also added and eliminated the natural and probable consequences doctrine for murder by providing that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), added by Stats. 2018, ch. 1015, § 2.) Under section 1172.6, a person convicted of felony murder, murder based on the natural and probable consequences doctrine, or any other theory under which malice is imputed based on a person's participation in a crime may file a petition to vacate the conviction and be resentenced if that person could not have been convicted of murder because of those statutory amendments. (*Harden,* at pp. 51, 53.) If the petitioner makes a prima facie showing of entitlement to relief under section 1172.6, the trial court must issue an order to show cause and conduct an evidentiary hearing on the petition. (*Id.* subds. (c) & (d); *Harden,* at p. 51.) However, if at the evidentiary hearing the prosecution proves beyond a reasonable doubt that the person was the actual killer or had the specific intent to kill the victim, the court must deny the petition because he or she is ineligible for resentencing relief under section 1172.6. (§ 1172.6, subd. (d)(3); *Delgadillo,* at p. 223; *Harden,* at pp. 47–48, 53 [actual killer is ineligible for § 1172.6 relief].)

As stated above, Williams's appointed counsel filed a brief pursuant to *Wende* and *Anders* that raised no arguable issues and requested that we

exercise our discretion to review the record for potential issues.[6]  For our consideration, counsel suggested as possible issues the following:  (1) whether the court erred in its factual findings or legal conclusions regarding Williams's eligibility for resentencing under section 1172.6; (2) whether the evidence presented at the evidentiary hearing was sufficient to support Williams's murder conviction under a theory of aiding and abetting; and (3) whether the evidence was sufficient to show that Williams was a major participant who acted with reckless disregard for human life.  We have exercised our discretion to independently review the record and have found no potentially meritorious issues that would support Williams's claim for section 1172.6 resentencing relief.

In his supplemental brief, Williams argues that he is entitled to relief under section 1172.6.[7]  First, he argues that his appointed counsel provided him with ineffective assistance at the evidentiary hearing on his section 1172.6 petition, by (i) failing to file a Code of Civil Procedure section 170.6 challenge to the judge based on his disclosure at the beginning of the hearing that his spouse works for the district attorney's office, (ii) failing to argue that

---

[6]  On October 31, 2024, Williams's counsel filed a motion to augment the record on appeal with the jury instructions given at his 2001 criminal trial. We now grant the motion and have reviewed those jury instructions together with the entire record on appeal.

[7]  Concurrently with his section 1172.6 petition, Williams filed a request that we take judicial notice of (1) our opinion in *Johnson, supra*, D038107; and (2) the trial court's decision on the separate section 1172.6 petition filed by Johnson, his codefendant.  We grant in part his request and take judicial notice of our opinion in *Johnson* and deny in part his request to the extent he seeks judicial notice of the trial court's decision on Johnson's section 1172.6 petition, which decision we deem to be irrelevant to Williams's section 1172.6 petition.

he is entitled to section 1172.6 relief even if he was the actual killer, (iii) failing to file a habeas corpus writ petition concurrently with his section 1172.6 petition, (iv) failing to object to the prosecution's argument that he was convicted by the jury as the actual killer of Hamilton, and (v) failing to properly investigate and defend him at the section 1172.6 hearing. Citing the corpus delicti doctrine, Williams also argues that his 2000 extrajudicial statements to police were insufficient, by themselves, to support a finding that he was the actual killer and therefore not entitled to section 1172.6 relief. In so arguing, he asserts that there were no eyewitnesses who saw him stab Hamilton. He also argues that his extrajudicial statements were coerced by police and show there was reasonable doubt that he acted in self-defense when he stabbed Hamilton. Finally, he argues that the court erred by finding that the record showed he was the actual killer and had the specific intent to kill Hamilton.

We have carefully considered each of Williams's specific arguments and conclude that they are not potentially meritorious issues and do not support his claim for section 1172.6 resentencing relief. In particular, the record supports the court's finding that Williams was the actual killer of Hamilton. As discussed above, there were multiple eyewitnesses who observed the two men who chased Hamilton and, in particular, the man who was holding a knife and was closest to Hamilton immediately prior to the stabbing. At trial, the trolley driver identified this man as Williams. The evidence admitted at Williams's 2001 trial supported a finding that Williams's height and clothing (i.e., shorter than the other man and wearing a blue shirt or jogging suit) matched that of the man with the knife and closest to Hamilton as described by the witnesses. Furthermore, the transcript and videotape of Williams's 2000 interview with police were admitted in evidence. During that interview,

8

Williams admitted that he stabbed Hamilton with the knife, but he claimed he did so in self-defense. In finding Williams guilty of first degree murder, the jury necessarily rejected his claim of self-defense, but nevertheless properly found credible his admission that he stabbed Hamilton with a knife. Based on the evidence, the jury properly found true the allegation that Williams personally used a knife in murdering Hamilton. Contrary to Williams's assertion, evidence of his 2000 extrajudicial statements was not the sole evidence proving his identity as the man who stabbed and killed Hamilton. Rather, the testimony of the multiple eyewitnesses corroborated, and supported, the jury's finding that Williams was the actual killer who stabbed and murdered Hamilton. Based on the trial evidence and the jury's verdicts, we conclude that the trial court here properly found that Williams was the actual killer of Hamilton and therefore was not entitled to section 1172.6 relief. (Cf. *Harden, supra*, 81 Cal.App.5th at pp. 56, 59–60 [murder conviction together with jury's true finding on allegation of personal infliction of great bodily injury showed appellant was actual killer and not entitled to § 1172.6 relief].) Likewise, the same evidence in the record supports the court's additional finding that Williams had the specific intent to kill Hamilton and therefore was not entitled to section 1172.6 relief.

Regarding his claim of ineffective assistance of counsel, Williams has not shown either: (1) his counsel's performance was deficient; or (2) that purported deficient performance was prejudicial to him and deprived him of a fair hearing. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 697.) Even assuming his counsel's performance was deficient, he cannot show that deficient performance was prejudicial because he is ineligible for section 1172.6 relief based on the court's factual findings that he was the actual

9

killer and had the specific intent to kill Hamilton.  (*Ibid.*; *Harden, supra*, 81 Cal.App.5th at pp. 47–48, 53 [actual killer is ineligible for § 1172.6 relief].)

Regarding Williams's challenge to the admissibility of the transcript and videorecording of his 2000 interview and any other evidence admitted at his 2001 criminal trial, he cannot challenge the admissibility of that evidence in seeking section 1172.6 relief, especially in light of our affirmance of his conviction in *Johnson, supra*, D038107.  (*People v. Cody* (2023) 92 Cal.App.5th 87, 104 [§ 1172.6 evidentiary hearings are not intended to allow relitigation of admissibility of evidence].)

As stated above, our independent review of the record pursuant to *Wende* and *Anders* has not disclosed any reasonably arguable appellate issues for reversal of the May 22, 2024 order.  Accordingly, we affirm the trial court's order.  Competent counsel has represented Williams in this appeal.

DISPOSITION

The order denying Williams's section 1172.6 petition is affirmed.

BUCHANAN, J.

WE CONCUR:


IRION, Acting P. J.


DATO, J.

10